# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 24, 2013 Session

## STATE OF TENNESSEE v. JORDAN PETERS

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S58,069     Robert H. Montgomery, Jr., Judge**

---

**No. E2012-02135-CCA-R3-CD - Filed January 7, 2014**

---

A Sullivan County Circuit Court Jury convicted the appellant of one count of delivering psilocin, a Schedule I drug, within 1,000 feet of a school, a Class A felony; one count of delivering psilocin, a Class B felony; and two counts of casual exchange, a Class A misdemeanor. After a sentencing hearing, the trial court merged each casual exchange conviction into a conviction for delivering psilocin and sentenced the appellant to an effective fifteen years in confinement. On appeal, the appellant contends that the evidence is insufficient to support the felony convictions; that the trial court erred by refusing to allow him to cross-examine the confidential informant (CI) about her prior convictions; that the trial court erred by refusing to allow him to question the CI and her husband about their prior drug use; that the trial court should have instructed the jury on entrapment; that cumulative errors warrant a new trial; and that his effective fifteen-year sentence is disproportionate to the crimes. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court committed reversible error regarding the appellant's cross-examination of the CI. Therefore, the appellant's convictions are reversed, and the case is remanded to the trial court for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Reversed, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

M. Jeffrey Whitt (on appeal), Knoxville, Tennessee, and William Andrew Kennedy (at trial), Blountville, Tennessee, for appellant, Jordan Peters.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Barry Staubus, District Attorney General; and Kent L. Chitwood, Jr., and Leslie Anne Foglia, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual Background

In May 2010, the Sullivan County Grand Jury indicted the appellant for count 1, selling psilocin on July 21, 2009; count 2, delivering psilocin on July 21, 2009; count 3, selling psilocin within 1,000 feet of an elementary school on July 28, 2009; and count 4, delivering psilocin within 1,000 feet of an elementary school on July 28, 2009. At trial, Detective Ginger Crowe of the Bristol Police Department's Vice Unit testified that in early 2009, Heather Caudill and Caudill's husband, Chris, came to the police department and asked to speak with narcotics detectives. The Caudills offered to give the detectives the names of individuals selling drugs and agreed to buy drugs from those individuals. The Caudills became CIs for the police department and began participating in controlled drug buys. The police department paid Mrs. Caudill $100 for each transaction.

Detective Crowe testified that on July 21, 2009, Mrs. Caudill advised her that the appellant had contacted Mrs. Caudill and claimed to have mushrooms, a drug also known as psilocin. Detective Crowe searched the Caudills for contraband, placed a body wire and a video recorder on Mrs. Caudill, and gave Mrs. Caudill money to buy the mushrooms. Mrs. Caudill had already arranged to meet the appellant at the Food City on Volunteer Parkway in Bristol, so Detective Crowe followed the Caudills there. Mrs. Caudill met the appellant behind the store, and Detective Crowe listened as Mrs. Caudill bought mushrooms from him. After the transaction was complete, Detective Crowe followed the Caudills back to a predetermined location. Mrs. Caudill gave the mushrooms to Detective Crowe, and Detective Crowe searched the Caudills for money and drugs.

Detective Crowe testified that on July 28, 2009, Mrs. Caudill advised her that the appellant had contacted Mrs. Caudill a second time about buying mushrooms. Police officers searched the Caudills, and Mrs. Caudill made a controlled telephone call to the appellant in order to set up a meeting location. Detective Crowe said the appellant suggested that he and Mrs. Caudill meet at the BP gas station at 101 Bluff City Highway in Bristol. The police gave Mrs. Caudill money to buy the mushrooms, put video and audio recorders on her, and followed the Caudills to the BP station. Detective Crowe parked across the street from the station and saw Mrs. Caudill walk to a silver Chevrolet HHR, which Detective Crowe had seen at the Food City on July 21. Detective Crowe listened as Mrs. Caudill spoke briefly with the appellant. After the transaction was complete, Mrs. Caudill returned to her car, and Detective Crowe followed the Caudills to a predetermined location. Mrs. Caudill gave the drugs to Detective Crowe, and Detective Crowe searched the Caudills for money and drugs.

On cross-examination, Detective Crowe testified that the Caudills participated in fifty

to sixty drug transactions during 2009. She said they described the appellant as "a friend of theirs."

Detective Daniel Graham of the Bristol Police Department testified that he worked with Detective Crowe and learned about the appellant from Chris and Heather Caudill. On July 21, 2009, Detective Graham and Detective Crowe met with the Caudills. Detective Graham gave Mrs. Caudill money to buy mushrooms from the appellant and helped wire her with recording devices. He followed the Caudills to the Food City in a separate vehicle from Detective Crowe and parked at Green's Bank. Detective Graham could not see the drug transaction from where he was parked but could hear it. After the transaction was complete, Detective Graham followed the appellant's gray Chevrolet HHR and recorded the car's license tag number. Then he met up with Detective Crowe and the Caudills. Detective Crowe gave Detective Graham the mushrooms she had received from the Caudills.

Detective Graham testified that on July 28, 2009, Mrs. Caudill contacted Detective Crowe about another drug buy. Detective Graham said that he and Detective Crowe met with the Caudills and that "[t]he deal had already been set up about the amount and price." Detective Graham had Mrs. Caudill telephone the appellant and ask where he wanted to meet. Detective Graham said that the call was on "speaker phone" and that "[t]here was a male's voice that said to meet at the BP on the Bluff City Highway." Detective Graham helped set up recording equipment for the drug buy, and Detective Crowe searched the Caudills. Detective Graham gave Mrs. Caudill the money to purchase the mushrooms and followed the Caudills to the BP station. He drove by the gas station and saw the same gray HHR that he had seen at the Food City on July 21. A white male was driving the car. Detective Graham parked in the parking lot where Detective Crowe was parked, watched Mrs. Caudill walk to the gray car, and watched her return to her car. He said that the transaction occurred in sixty seconds, that he followed the Caudills back to the predetermined location, and that he recovered the drugs.

On cross-examination, Detective Graham testified that he gave Mrs. Caudill forty dollars to buy the mushrooms on July 21 and eighty dollars to buy them on July 28. Mrs. Caudill received $100 for her participation in each of the drug buys.

Lieutenant Glenn James of the Bristol Police Department testified that he "rode along" with Detective Crowe for both of the drug buys. Lieutenant James was present when Detectives Crowe and Graham met with the Caudills before the first transaction. Lieutenant James searched the Caudills's vehicle for contraband but did not find anything. Then he and Detective Crowe followed the Caudills to the Food City on Volunteer Parkway. Detective Crowe parked in front of the store while the Caudills drove behind the building. Lieutenant James heard Mrs. Caudill get into another car, talk with a male for four to five minutes, get

out of that car, and walk back to her own car. Shortly thereafter, the Caudills drove around the corner of the building, and Detective Crowe followed them to a predetermined meeting place. There, Detective Crowe "recovered a baggie containing a grayish looking plant material."

Lieutenant James testified that the second transaction occurred at the BP gas station on Bluff City Highway. Before the transaction, Detective Crowe searched the Caudills, and Lieutenant James searched their car for contraband. Then Detective Crowe drove to an area near the gas station and pulled into a parking lot to watch the drug buy. Lieutenant James saw Mrs. Caudill get out of her car and walk to the appellant's car, which was parked at a gas pump. Mrs. Caudill was at the appellant's car for less than two minutes, returned to her car, got into her car, and left the BP. A few seconds later, the appellant's HHR also left the BP. Detective Crowe followed Mrs. Caudill's vehicle. En route to the predetermined location, the HHR passed Detective Crowe's vehicle, and Lieutenant James saw the HHR's license plate. It was the same HHR that had been at the Food City on July 21. On cross-examination, Lieutenant James testified that he never heard any telephone conversations between the Caudills and the appellant.

Heather Caudill testified that she had known the appellant for four years. In 2009, she approached detectives at the Bristol Police Department about working as a CI. She said that when she had information for the detectives, she would give it to them and "go from there." At some point, she informed them that she could get mushrooms. She said that she did not know anything about mushrooms but that the detectives were interested in her purchasing them. The officers gave her forty dollars, her husband drove her to meet the appellant, and the officers followed. The appellant had chosen the Food City on Volunteer Parkway as the meeting place. Mrs. Caudill got out of her car and got into the appellant's car. He instructed her on how to use the mushrooms, she gave him the money, and he gave her the mushrooms. She returned to her car, and she and her husband left the Food City. They met the detectives at a predetermined location, and the detectives retrieved the drugs.

The State played a video recording of the first drug transaction. The recording shows Mrs. Caudill getting into the front passenger seat of the appellant's car. The appellant gives her a baggie containing the mushrooms, tells her that they are "flying saucers," and tells her that they are "supposed to give you kaleidoscope vision." The appellant tells her, "Don't smoke 'em, eat 'em." Mrs. Caudill jokingly pats the appellant's stomach and says, "I know how to eat and you do too. Look at that fat belly." The appellant asks her, "Are ya'll splitting them or what?" Mrs. Caudill answers, "I don't know what we're going to do." He tells her that "if both of ya'll do half, you'll feel really good, but you probably won't get the hallucination." At the conclusion of the transaction, the appellant tells Mrs. Caudill, "Hey tell me how you feel after you take them." Mrs. Caudill gets out of his car and tells him,

-4-

"Don't call me, I'll call you."

Mrs. Caudill testified that sometime later, the appellant told her that he could get mushrooms and that "it was a bigger quantity." Mrs. Caudill met with the detectives and waited for the appellant to telephone her. She said that when the appellant called, she was with the officers and "put him on speaker phone." The appellant told her that he was at a gas station and told her to meet him there. The officers gave Mrs. Caudill the money to buy the mushrooms, and she and her husband drove to the BP station. The appellant was sitting in his car while gas was pumping into it. Mrs. Caudill got out of her car, walked to the appellant's car, and gave him the money. The appellant gave her the mushrooms, and she and her husband left the gas station.

The State played the video recording of the second drug transaction. The video shows Mrs. Caudill getting out of her car and quickly walking to the appellant's car. She asks him how he is doing, and they make the exchange. Then Mrs. Caudill walks quickly back to her car.

On cross-examination, Mrs. Caudill testified that she was thirty-one years old and that her husband was thirty-four years old. She acknowledged that the appellant used to come to their house occasionally and that he played video games or basketball with her husband. She also acknowledged that she borrowed the appellant's car and that he gave her a video cassette recorder (VCR) for her children. At some point, Mrs. Caudill, working as a CI, telephoned the appellant and asked if he "could get [her] anything." During the first drug transaction, the appellant told her that the amount of the mushrooms was only enough for one person. Mrs. Caudill said, though, that the amount he gave her could have been enough for two to four people using mushrooms for the first time. She said that in order to set up the meeting place for the second transaction, "I don't know who called who." However, the appellant told her during the call that he was at the BP gas station. Mrs. Caudill acknowledged that when she met the appellant there, he was on duty as a pizza deliveryman. She also acknowledged that the detectives paid her for her work in this case.

Jonathan Hamrick, a geographic information systems analyst for the City of Bristol, testified as an expert in cartography and map making that he prepared a map showing Haynesville Elementary School and the BP gas station located at the intersection of Bluff City Highway and Edgemont Avenue. The store was 587.917 feet from the elementary school.

Clayton Hall, a special agent forensic scientist with the Tennesse Bureau of Investigation (TBI), testified as an expert in chemical analysis and drug identification that he tested the substance collected on July 21, 2009. The substance weighed 2.9 grams and

-5-

contained psilocin. David Holloway, a forensic drug chemist with the TBI, testified as an expert in chemical analysis and drug identification that he tested the substance collected on July 28, 2009. The substance weighed 6.22 grams and was a mushroom material that contained psilocin, a Schedule I controlled substance.

Scott Latham, the Director of Attendance and Community Outreach for Bristol City Schools, testified that Haynesville Elementary was operating as a public school on July 28, 2009. On cross-examination, Latham acknowledged that school was not in session on July 28 due to summer break. At the conclusion of Latham's testimony, the State rested its case.

The appellant testified that he met the Caudills in 2008 and became friends with them. He let Mrs. Caudill borrow his car and smoked marijuana and consumed pills with her. In July 2009, the appellant was twenty years old and was working as a delivery driver for Papa Johns. He said that in June 2009, he and his friends had "tripped" on some mushrooms, did not have a good experience with the mushrooms, and wanted to get rid of them in order to buy marijuana. He said that for the first transaction in this case, Mrs. Caudill contacted him and asked if he "had anything." The appellant told her that he had some "flying saucers," referring to the mushrooms. He said that she gave him forty dollars for the mushrooms and that he did not make a profit from the sale. He said, "I don't even think I broke even." The next week, Mrs. Caudill telephoned him again and asked for mushrooms. He said that she wanted "a bigger quantity" and that

> I remember I was at the gas station or getting ready to go and I know I was really mad and I said, "No, no, I can't. I can't." And I was like "We'll do it later," or something. And she was like, "No, I'm right here. I'm right here at the BP. I'm right here. I'm right here, just hurry up and meet me here. Hurry up and meet me here." That's exactly what happened.

After speaking with Mrs. Caudill, the appellant left Papa Johns, drove home to get the mushrooms, and drove to the gas station. While he was putting gasoline into his car, Mrs. Caudill arrived. He gave her the mushrooms, and she gave him eighty dollars. He did not make a profit from the sale.

On cross-examination, the appellant testified that he and his friends had paid two hundred fifty dollars for the mushrooms and that "[w]e didn't like them. One of my friends tried to kill himself." The appellant used the money Mrs. Caudill gave him for the mushrooms to buy marijuana. When she telephoned him on July 28, he was in the process of delivering a pizza. He drove to the BP station, put gasoline into his car, and waited for her to arrive. He did not know anything about a school zone. He acknowledged that he had

-6-

not wanted the transaction to take place at the gas station because it was in the open and that he had arranged for the first transaction to take place behind the Food City. He said that he was trying to get drugs for the Caudills and that he was not trying to get money from them. However, he acknowledged that he received money from Mrs. Caudill for the mushrooms.

At the conclusion of the testimony, the jury found the appellant guilty of count 1, casual exchange as a lesser-included offense of selling psilocin on July 21, 2009, a Class A misdemeanor; count 2, delivering psilocin on July 21, 2009, a Class B felony; count 3, casual exchange as a lesser-included offense of selling psilocin within 1,000 feet of an elementary school on July 28, 2009, a Class A misdemeanor; and count 4, delivering psilocin within 1,000 feet of an elementary school on July 28, 2009, a Class A felony. After a sentencing hearing, the trial court merged count 1 into count 2, merged count 3 into count 4, and sentenced the appellant as a Range I, standard offender to eight years for count 2 and fifteen years for count 4. The trial court ordered that the appellant serve the sentences concurrently for a total effective sentence of fifteen years in confinement.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support his felony convictions in counts 2 and 4. Specifically, he argues that the evidence shows he was guilty only of casual exchange because both transactions were initiated by telephone calls from Mrs. Caudill; the first transaction involved an amount of mushrooms only enough for one person, supporting his claim that he thought one of the Caudills would use the mushrooms and not resell them; the second transaction involved a larger amount because Mrs. Caudill told him that she needed "a bigger quantity" in order for her and her husband to have enough; and the State did not refute his claim that he did not profit from either exchange. Regarding his conviction in count 4, the appellant contends that the evidence is insufficient to show that he violated the Drug-Free School Zone Act because the exchange occurred at night and during the summer break when no child could have been endangered. The State argues that the evidence is sufficient. We agree with the State.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." State v. Wagner, 382

S.W.3d 289, 297 (Tenn. 2012); see also State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See Wagner, 382 S.W.3d at 297; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The jury, as the finder of fact, is responsible for assessing the credibility of the witnesses, deciding the weight to accord their testimony, and reconciling any conflicts in the proof. See Wagner, 382 S.W.3d at 297; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this court cannot re-weigh the evidence or draw any inferences from it other than those drawn by the jury. See Wagner, 382 S.W.3d at 297; Cabbage, 571 S.W.2d at 835. A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of both. "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-417(a)(2) provides that it is an offense knowingly to deliver a controlled substance. "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). Generally, a person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). A violation of 39-17-417 subsection (a) with respect to a Schedule I controlled substance is a Class B felony. Tenn. Code Ann. § 39-17-417(b). "Psilocyn" is a Schedule I controlled substance. Tenn. Code Ann. § 39-17-406(d)(23). Moreover, the Drug-Free School Zone Act provides that a violation of Tennessee Code Annotated section 39-17-417 "that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public . . . elementary school . . . shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1).

Tennessee Code Annotated section 39-17-418 provides, "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tennessee Code Annotated section 39-17-419 sets out the following inference:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small

amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

"The exchange of a controlled substance, including a transaction where money is exchanged for the controlled substance, is 'casual' when it is without design." State v. Jeremy Taylor, No. E2000-01724-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 258, at *9 (Knoxville, Apr. 10, 2001) (citing State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974)).

Taken in the light most favorable to the State, the evidence shows that on July 21, 2009, the appellant spoke with Mrs. Caudill on the telephone and arranged to transfer mushrooms to her behind the Food City. There, she gave him forty dollars, and he gave her the mushrooms. Similarly, on July 28, the appellant spoke with Mrs. Caudill on the telephone and arranged to transfer the mushrooms to her at the BP gas station. When Mrs. Caudill arrived at the station, she walked to the appellant's car and gave him eighty dollars, and he gave her the mushrooms. We note that although the jury convicted the appellant of casual exchange as a lesser-included offense of selling psilocin in counts 1 and 3 and counts 1 and 3 involved the same set of circumstances and occurred at the same time as counts 2 and 4, an appellate court "will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." Wiggins v. State, 498 S.W.2d 92, 94 (Tenn. 1973); State v. Laythaniel Haney, No. E2009-00875-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 375, at **10-11 (Knoxville, May 11, 2010). The evidence is sufficient to show that the appellant delivered psilocin to Mrs. Caudill on July 21 and July 28, 2009.

As to the appellant's claim that the evidence is insufficient to show that he violated the Drug-Free School Zone Act because the exchange occurred at night and during the summer break when no child could have been endangered, this court has already held that a school does not have to be in session in order for a defendant to violate the Act. See State v. James Alfred Reed, Jr., No. E2010-01138-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 547, at *15 (Knoxville, July 18, 2011); see also State v. Smith, 48 S.W.3d 159, 169 (Tenn. Crim. App. 2000).

B. Mrs. Caudill's Prior Convictions

The appellant contends that the trial court erred by refusing to allow him to question

Mrs. Caudill about prior convictions pursuant to Rules 608(b) and 404(b), Tennessee Rules of Evidence. The State argues that the trial court properly excluded the evidence. We conclude that the trial court erred and that the error was not harmless.

During her direct testimony, Mrs. Caudill testified that "I didn't even know what mushrooms looked like or anything so I had to even make sure that was something we could even use, you know. And [the police] told me, yes, so I went from there as far as telling [the appellant], yes, that that's what we wanted." After Mrs. Caudill's direct examination testimony, defense counsel requested a jury-out hearing and asked that he be allowed to impeach Mrs. Caudill with two prior convictions. The first was a March 2009 conviction in Washington County, Tennessee, for obtaining narcotics by fraud for which Mrs. Caudill pled guilty and received a three-year sentence and diversion after the successful completion of her probation. The second was a May 2011 conviction in Washington County, Virginia, for prescription fraud, for which Mrs. Caudill received a three-year sentence on supervised probation as a "first offender."[1] Defense counsel argued that the convictions were relevant because "she's sitting up there as though she is totally innocent of . . . ever knowing anything about drugs and . . . clearly she has been involved with drugs."

While the jury was out of the courtroom, defense counsel questioned Mrs. Caudill about the convictions, and she testified that she was still serving probation for both of them. The State advised the court that it had copies of Mrs. Caudill's judgments of conviction but argued that the convictions were irrelevant because "it's clear from the video she wasn't familiar with this particular drug. . . . It doesn't go to truthfulness. It's just trying to elicit a prior bad act from her." The trial court ruled that defense counsel could not impeach Mrs. Caudill with the prior convictions because "I do find clear and convincing evidence that they exist but they've both been deferred so there's not what I understand to be what essentially would be a conviction." The trial court then addressed whether the convictions would be admissible as prior bad acts and concluded that the appellant could not question Mrs. Caudill about the prior convictions because psilocin could not be obtained by prescription. In other words, the convictions were irrelevant.

First, the appellant contends that the trial court should have allowed him to impeach Mrs. Caudill with her prior convictions pursuant to Rule 608(b), Tennessee Rules of

---

[1]Virginia's first offender statute, Virginia Code Annotated section18.2-251, provides that if a person pleads guilty or enters a plea of not guilty, the court, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place the person on probation upon terms and conditions. Upon fulfilling the terms and conditions, the court must discharge the person and dismiss the proceedings. Va. Code Ann. § 18.2-251.

Evidence, because the convictions were relevant to her character for truthfulness. The State argues that defense counsel "mischaracterized" Mrs. Caudill's testimony about being unfamiliar with mushrooms as testimony that she was unfamiliar with drugs and that "Mrs. Caudill's prior prescription fraud does nothing to rebut her statement at trial that she knew nothing about mushrooms."

Tennessee Rule of Evidence 608(b) provides,

> Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness . . . , be inquired into on cross-examination.

Before a witness can be questioned, the trial court, upon request, must hold a hearing to determine whether "the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry." Tenn. R. Evid. 608(b)(1).

We note that at the time of the appellant's trial, Mrs. Caudill was still on probation, and her convictions had not yet been expunged. In any event, unlike Tennessee Rule of Evidence 609, Rule 608 allows for impeachment of a witness who has been granted judicial diversion. State v. Thorne Peters, No. W2011-00680-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 306, at *16 (Jackson, May 9, 2012). This court reviews a trial court's ruling under Tenn. R. Evid. 608(b) under an abuse of discretion standard. State v. Reid, 91 S.W.3d 247, 303 (Tenn. 2002).

Turning to the instant case, although defense counsel did not specifically refer to Tennessee Rule of Evidence 608(b) in his argument to the trial court, his argument demonstrates that he wanted to question Mrs. Caudill about her prior convictions in order to show that she was testifying untruthfully. The trial court found that a factual basis existed for an inquiry about the convictions. Although the trial court found that the convictions were irrelevant, they involved fraud and, therefore, were crimes of dishonesty. See State v. Dan Anderson, No. 929, 1991 Tenn. Crim. App. LEXIS 250, at *23 (Knoxville, Apr. 1, 1991) (stating that a crime involving fraud is a crime of dishonesty). As such, they were probative to Mrs. Caudill's character for truthfulness, and the trial court should have allowed the appellant to impeach her with them.

Next, we must determine the effect of the trial court's error. In order to determine whether the constitutionally improper denial of a defendant's opportunity to impeach a

-11-

witness is harmless, we consider the following factors: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." State v. Rice, 184 S.W.3d 646, 670 (Tenn. 2006) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

In the present case, Mrs. Caudill's testimony was particularly important to the State's case because the ultimate issue was whether the appellant was guilty of selling and distributing a Schedule I controlled substance or guilty only of casual exchange. Mrs. Caudill was the only State witness who could provide details about her friendship with the appellant, details about which of them initiated the drug transactions, and details about the conversations they had to arrange the transactions. Moreover, Mrs. Caudill's testimony often conflicted with that of the appellant. For example, regarding who initiated the transactions, she could not remember "who called who." The appellant, however, testified that she initiated both transactions by telephoning him. Regarding the second transaction, Mrs. Caudill testified that the appellant "had already said that he could get the mushrooms again and it was a bigger quantity" while the appellant testified that she contacted him "cause she wanted some more, like a bigger quantity." Finally, the fact that the jury convicted the appellant of two counts of casual exchange as a lesser-included offense demonstrates that the jury questioned the appellant's level of culpability in this case. Therefore, we cannot say that the trial court's error was harmless.

The appellant also contends that he should have been allowed to cross-examine Mrs. Caudill about the prior convictions pursuant to Tennessee Rule of Evidence 404(b), which provides that although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait, the evidence may be admissible for other purposes. However, the evidence in this case was to be offered during cross-examination of the witness in order to demonstrate that she was testifying untruthfully. Therefore, the more appropriate rule was Tennessee Rule of Evidence Rule 608(b).

C. Prior Drug Use by the Caudills

The appellant contends that the trial court erred by refusing to allow him to question the Caudills about their prior drug use, particularly their prior drug use with him, because the evidence was "vitally important" to his claim that he only casually exchanged the drugs with Mrs. Caudill. The State argues that Mr. and Mrs. Caudills' prior drug use with the appellant was irrelevant because "while the record establishes that Mrs. Caudill and the defendant used drugs together in the past, . . . the record does not indicate that any of these episodes involved

an <u>exchange</u> of drugs between the parties, casual or otherwise." We conclude that the appellant is not entitled to relief on this issue.

During opening statements, defense counsel acknowledged that the appellant possessed the mushrooms but claimed that he casually exchanged them with Mrs. Caudill. During the jury-out hearing described in the previous section, defense counsel requested that he be allowed to question Mrs. Caudill about her and her husband's drug use with the appellant. The trial court, having just denied counsel's request to impeach Mrs. Caudill with her prior convictions, asked, "I assume you're asking it with regard to credibility for truthfulness or untruthfulness, prior bad acts?" Defense counsel answered, "I'll have to wait for 404(b) when my client takes the stand." The trial court denied the request, stating that "I don't find that the probative value substantially outweighs its prejudicial effect, talking about mushrooms." Defense counsel stated, "Okay. Then I suppose I'm ready." The jury returned to the courtroom, and defense counsel began cross-examining Mrs. Caudill.

At the conclusion of the State's case-in-chief, the jury left the courtroom for a break. Defense counsel advised the trial court that it was going to call Chris Caudill to the stand and that "it is my intent to ask him if he was ever present when Mr. Peters was partaking in drugs, doing drugs." The trial court asked counsel about his "basis for that" and counsel answered, "Well, for their intent as to why they would be picking him as a person to target." The trial stated that "whether they targeted him" was irrelevant. The court also stated, "I think it would potentially even confuse the jury because the issue is not whether or not Mr. Peters has used drugs in the past or why they talked to Mr. Peters." Defense counsel never called Mr. Caudill as a witness.

Generally, to be admissible, evidence must be relevant to some issue at trial. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). "Under this standard, we will not reverse unless the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Cannon, 254 S.W.3d 287, 295 (Tenn. 2008) (internal quotations and citations omitted).

The appellant contends that he wanted to question the Caudills about their prior drug use with him "to show prior exchanges that would show (or at least provide a basis for the jury to infer) that the charged exchanges were, in fact, casual exchanges." We agree with the appellant that his prior recreational drug use with the Caudills would have been relevant to show that he did not knowingly sell or deliver drugs to Mrs. Caudill on July 21 and 28 and that he casually exchanged drugs her. However, the appellant did not make that argument to the trial court. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating that "[o]rdinarily, issues raised for the first time on appeal are waived"). In any event, the appellant failed to make an offer of proof regarding his proposed questioning of Heather or Chris Caudill. See Tenn. R. App. P. 36(a). Therefore, he is not entitled to relief.

### D. Entrapment Instruction

The appellant contends that the trial court committed reversible error when it failed to instruct the jury on entrapment because the evidence shows that Mrs. Caudill, working as a CI for law enforcement, "lured" him into the school zone. The State claims that the appellant has waived this issue because he failed to give notice of his intent to rely on an entrapment defense and because he failed to include the jury instructions in the appellate record. The State also argues that, irrespective of the waiver, the trial court did not err by failing to give the instruction because entrapment was not raised by the evidence. We conclude that the appellant has waived the issue.

In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992) (citing State v. Thompson, 519 S.W. 2d 789, 792 (Tenn. 1975)). A defendant is entitled to have a defense submitted to the jury when it is fairly raised by the proof. See Tenn. Code Ann. § 39-11-203(c). When determining whether to instruct the jury on the defense, the trial court must "consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

Tennessee Code Annotated section 39-11-505 provides,

> It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. If a defendant intends to rely on the defense of entrapment, the defendant shall give to the district attorney general a notice comparable to that required for an insanity defense under Rule 12.2 of the Tennessee Rules

-14-

of Criminal Procedure.

In State v. Blackmon, 78 S.W.3d 322, 331 (Tenn. Crim. App. 2001), this court explained as follows:

> The threshold question of whether the defense of entrapment has been "fairly raised" is for determination by the judge and not the jury. Nonetheless, where the proof fairly raises the issue of entrapment, and the proof is supported by credible evidence, the trial court is required to give the instruction of entrapment whether requested or not. To determine when this statutory defense is fairly raised by the proof so as to require its submission to the jury, a court must, in effect, consider the evidence in the light most favorable to the defendant, including all reasonable inferences flowing from that evidence. See State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998), perm. to appeal denied, (Tenn. 1999) (citing State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993)). Thus, if entrapment is, in fact, "fairly raised by the proof," the issue of predisposition becomes a question of fact for the jury. See also Sherman v. United States, 356 U.S. 369[, 377 (1958).]

This court has recognized that "proof that the State lured a defendant into the 1000' school zone would 'fairly raise' an entrapment defense." State v. Charles Lincoln Faulkner, No. E2006-02094-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 429, at *45 (Knoxville, June 2, 2008).

Initially, we note that the State argues that the appellant has waived this issue because he failed to include the jury instructions in the appellate record. Granted, the appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. See Tenn. R. App. P. 24(b). However, at the motion for new trial hearing, the trial court acknowledged that it did not instruct the jury on entrapment. Therefore, we conclude that the appellant's failure to include the transcript in the record on appeal would not prevent us from reviewing the issue. See, e.g., State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (holding that appellate record was sufficient for review of defendant's sentencing issues despite her failure to include guilty plea hearing transcript). However, the appellant failed to provide notice of an entrapment defense as required by Tennessee Code Annotated section 39-11-505 and did contend during closing arguments that Mrs. Caudill entrapped him by luring him to the BP station. See Tenn. R. App. P. 36(a); State v. Kenneth Wilson, No.

02C01-9510-CR-00322, 1996 Tenn. Crim. App. LEXIS 558, at *4 (Jackson, Sept. 11, 1996) (trial court did not commit reversible error by failing to charge entrapment when defendant did not provide notice of the defense as required by Tennessee Code Annotated section 39-11-505 or argue entrapment at trial). Therefore, we conclude that he is not entitled to relief.

## E. Cumulative Error

The appellant contends that the cumulative effect of the trial court's errors deprived him of due process. However, we have concluded that the trial court's error regarding its failure to allow the appellant to cross-examine Mrs. Caudill about her prior convictions warrants reversal.

## F. Disproportionate Sentence

Finally, the appellant contends that his fifteen-year sentence for delivering psilocin within 1000' of a school in count 4 is grossly disproportionate to the crime. The State argues that the appellant's sentence is not grossly disproportionate. We agree with the State.

Although no witnesses testified at the appellant's sentencing hearing, the State introduced the appellant's presentence report into evidence. According to the report, the then twenty-three-year-old appellant was single with no children. In the report, the appellant described his physical health as fair due to back problems caused by being overweight and marching in his high school band with a heavy instrument. He also described his mental health as fair due to long- and short- term memory loss and the traumatic experience caused by this case. The appellant stated in the report that he began drinking alcohol and smoking marijuana when he was seventeen years old and that he dropped out of high school after completing the eleventh grade. The report shows that the appellant used other illegal drugs, including prescription pain pills, cocaine, and Xanax. The report shows that he worked as a deliveryman for Dominos Pizza in the summer of 2011, that he worked as a deliveryman for Papa Johns Pizza from April 2009 to May 2010, and that he worked as a temporary employee for Glaxo Smith Kline in 2007. According to the report, the appellant has a prior misdemeanor conviction for possession of unlawful drug paraphernalia. Although the appellant was granted probation and judicial diversion for that conviction, he violated his probation by failing to report.

The trial court merged the casual exchange convictions in counts 1 and 3 into the corresponding convictions for delivering psilocin in counts 2 and 4. The trial court sentenced the appellant to eight years for delivering psilocin in count 2 and fifteen years for delivering psilocin within 1000' of a school in count 4 and ordered that he serve the sentences

concurrently. The trial court noted that the fifteen-year sentence for count 4 "is at 100% service of the sentence."[2]

Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, in State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012), our supreme court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" In determining a defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In support of his claim that his fifteen-year sentence is grossly proportionate to the crime, the appellant relies heavily on Thomas D. Smith v. Jack Morgan, No. 3:04-cv-00775 (M.D. Tenn., Nov. 15, 2011) (order), in which the district court granted the defendant's petition for a writ of habeas corpus seeking relief from his sixty-year sentence for possession with intent to sell 1.4 grams of crack cocaine within a drug-free school zone. In the petition, the defendant claimed that the sentence violated the Eighth Amendment's prohibition against sentences that are grossly disproportionate to the crime despite the fact that in State v. Smith, 48 S.W.3d 159, 173 (Tenn. Crim. App. 2000), this court had rejected that argument and upheld his sentence. However, as noted by the State, the Sixth Circuit Court of Appeals reversed the ruling of the district court. See Thomas D. Smith v. John Howerton, No. 11-6517, 2012 U.S. App. LEXIS 26482 (6th Cir., Dec. 27, 2012). As a result, Thomas D. Smith v. Jack Morgan does not support the appellant's argument.

As stated previously, delivery of psilocin within 1,000 feet of a school is a Class A felony. Our Code provides that the range of punishment for a Range I, standard offender

---

[2]Tennessee Code Annotated section 39-17-432(c) of the Drug-Free School Zone Act provides that a defendant sentenced for violating subsection (b) of the Act must serve "at least the minimum sentence for the defendant's appropriate range of sentence." Given that the minimum sentence for a Range I, standard offender convicted of a Class A felony is fifteen years, the appellant would be required to serve 100% of his sentence.

convicted of a Class A felony is fifteen to twenty-five years.  <u>See</u> Tenn. Code Ann. § 40-35-112(a)(1). The trial court sentenced the appellant to fifteen years, the minimum punishment in the range.  Therefore, we conclude that there is no inference of "gross disproportionality." <u>See</u> <u>State v. Harris</u>, 844 S.W.2d 601, 603 (Tenn. 1992).

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we reverse the judgments of the trial court and remand the case for further proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE